**UNITED STATES of America,
Plaintiff,**

v.

**Stephen KNEAPLER and Bryna Kneapler, Defendants.**

**Case No. 09–21706–CIV.**

United States District Court,
S.D. Florida.

April 14, 2010.

Thomas F. Koelbl, United States Department of Justice, Washington, DC, for Plaintiff.

Stanley Paul Kaplan, Miami, FL, Steven Michael Kwartin, Hollywood, FL, for Defendants.

## OMNIBUS ORDER

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Plaintiff's Partial [1] Motion for Summary Judgment, filed January 31, 2010 (D.E. 31). Defendants filed an amended response on February 22, 2010 (D.E. 46), to which Plaintiff replied March 4, 2010 (D.E. 47). Also before the Court is Defendants' Motion to Strike Declarations of Ivette Welch and Jay Wein and Exhibits Thereto, filed March 23, 2010 (D.E. 48), to which Plaintiff responded in opposition on March 30, 2010 (D.E. 49). Finally, Defendants' Unopposed Motion for Leave to File Amended Answers, filed February 9, 2010 (D.E. 41), is also before the Court.

THE COURT has considered the three Motions, the pertinent portions of the record and is otherwise fully advised in the premises.

### Procedural Background

On June 22, 2009, Plaintiff United States of America ("United States") filed this action against Defendants Stephen Kneapler and Bryna Kneapler (together, the "Kneaplers") seeking to reduce to judgment unpaid federal income taxes assessed against Stephen Kneapler for taxable years 1993 and 1995, and against the Kneaplers jointly for the taxable year 2004. (Complaint, D.E. 1.) The Kneaplers separately answered the Complaint on August 7, 2009, both asserting statute of limitations as affirmative defenses for the 1993 and 1995 tax liabilities.[2] (D.E. 11, 12.) The Court then entered its Scheduling Order, which, among other things, set September 18, 2009 as the deadline for amending pleadings, and January 8, 2010 as the motion deadline. (D.E. 13.)

On January 8, 2010, the United States filed its Partial Motion for Summary Judgment (the "Motion for Summary Judgment"), seeking to reduce to judgment the assessments of tax liability made against the Kneaplers for only the taxable years 1995 and 2004. The 1993 tax year is not addressed in the Motion for Summary Judgment. Before the Kneaplers filed their response in opposition to the Motion, the United States filed a "Notice of Concession" on February 3, 2010. (D.E. 36), which states in pertinent part: "The United States no longer seeks to reduce Stephen Kneapler's 1993 tax liability to judg-

---

1. Due to the subsequent events in this case, which are discussed below, the United States' Motion is no longer a "partial" motion for summary judgment, but rather a full motion for summary judgment.

2. Bryna Kneapler asserted statute of limitations for the 1993 year even though the United States did not seek to reduce to judgment that year against her.

ment ... Because of the concession of the 1993 tax year, the United States' motion for partial summary judgment now is effectively a motion for summary judgment."

The Kneaplers thereafter quickly responded to the United States' Motion for Summary Judgment, arguing that there are genuine issues of material fact as to the amounts the Kneaplers allegedly owe for the taxable years 1995 and 2004 and stating that the Notice of Concession gave rise to additional affirmative defenses that would require the United States to reapply the payments, transfers and other credits made for the 1993 taxable year against any amounts the Kneaplers are ultimately determined to owe for the 1995 and 2004 tax years. (D.E. 39.) Then, on the eve of the Pretrial Conference, the Kneaplers filed their Unopposed Motion for Leave to File Amended Answers and Affirmative Defenses, arguing that the Court should grant them leave to amend because the United States was attempting to take the 1993 taxable year out of the case, and the Kneaplers wanted to assert the affirmative defenses of payment, offset, and equitable recoupment with respect to that year to reduce their tax liabilities for 1995 and 2004. (D.E. 41.)

The Court held a Pretrial Conference on February 12, 2010, where the issues raised by the Kneaplers' response to the Motion for Summary Judgment and their Motion for Leave to Amend were discussed. Ultimately, the Court struck the Kneaplers' response to the Motion for Summary Judgment and ordered them to file an amended response that addressed, among other matters, the legal implications of the United States' Notice of Concession. (D.E. 43.) The Kneaplers timely filed their Amended Response to the United States' Motion for Summary Judgment, and then,

almost a month later, filed a Motion to Strike the affidavits appended to the United States' Motion for Summary Judgment and Reply brief.

Accordingly, there are now three motions before the Court: (1) the Kneaplers' Motion for Leave to Amend their Answers; (2) the United States' Motion for Summary Judgment; and (3) the Kneaplers' Motion to Strike. The Court will address each in turn.

### *Discussion*

### I.  Motion for Leave to Amend

As referenced above, the Scheduling Order established September 18, 2009, as the deadline for amending pleadings. Almost five months later, the Kneaplers filed their Motion for Leave to Amend seeking to amend their answers in order to assert the affirmative defenses of equitable recoupment, payment, and setoff. A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R.Civ.P. 16(b)(4).[3] "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1418 (11th Cir.1998) (citing Fed.R.Civ.P. 16 advisory committee's note).

The Kneaplers have failed to demonstrate that there is good cause to amend the Court's Scheduling Order. Instead, they state that they have been all the while planning their defense in this action,

> a large segment of which concerned the taxable year 1993, the legitimacy of the assessment for such year, and the reapplication of payments, transfers, and credits applied to such year which, in light of the Government's concession, should now be utilized to offset any

---

**3.** Interestingly, the Kneaplers do not address Rule 16's good cause standard in their Mo-

tion.

amounts that the Defendants are determined to owe the Government, if any. (Motion ¶ 5.) The Kneaplers argue that the United States' Notice of Concession is a last-minute attempt to deprive this Court of jurisdiction over the 1993 tax year and that they should be permitted to amend their pleadings to assert the affirmative defenses of payment, offset and equitable recoupment so that this Court can maintain jurisdiction over the 1993 tax year. (Motion ¶¶ 7–8.) And because the 1993 taxable year has been at issue since the inception of the case, the Kneaplers argue that there can be no claim of prejudice or surprise to the United States if the Court were to grant their Motion for Leave to Amend.

The Court denies the Kneaplers' Motion for Leave to Amend for two principal reasons.[4] First, the Court rejects the notion that the United States' Notice of Concession somehow gives rise to affirmative defenses that did not previously exist. This contradicts the Kneaplers' argument that a large part of their defense was—and always has been—that any payments, transfers, and credits applied to taxable year 1993 should be utilized to offset any amounts owed for taxable years 1995 and 2004.[5] If the Kneaplers' position from the beginning was indeed that the 1993 year should be used to offset any future liabili-

ties, then they should have lodged their affirmative defenses in the beginning of the case and the Notice of Concession should have been of no consequence. Thus, it appears to the undersigned that the Kneaplers have not been diligent in asserting their affirmative defenses, and, therefore, they should be precluded from now seeking a modification of the Court's Scheduling Order.

Second, it appears that any amendment to the Kneaplers' answers to assert the affirmative defenses would be futile:

■ Equitable recoupment is an affirmative defense that is only appropriate in a narrow set of circumstances. "A claim for equitable recoupment will lie only where the United States has taxed a single transaction, item, or taxable event under two inconsistent theories" of taxation. *United States v. Dalm,* 494 U.S. 596, 605 n. 5, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). For example, equitable recoupment is available where a taxpayer pays income tax on his partnership distributions, and, after his death, his estate erroneously pays an estate tax on those same distributions. *Bull v. United States,* 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). In such a case, the partnership distributions are subjected to double taxation based on inconsistent legal theories,

4. The Court notes that the Kneaplers provide no authority (and the Court is aware of none) to support the proposition that the United States' unilateral Notice of Concession divests this Court of jurisdiction over the 1993 taxable year. Indeed, the Kneaplers later take the opposite position, arguing in their Amended Response to the United States' Motion for Summary Judgment that the Notice of Concession "does *nothing* to affect this Court's jurisdiction over the 1993 year." (D.E. 46–1, p. 9 (emphasis added).) For both reasons, the Court finds the Kneaplers' loss-of-jurisdiction argument dubious, and it certainly does not support a finding of "good cause" to modify this Court's Scheduling Order.

5. Exhibit 4 to the United States' Motion for Summary Judgment indicates that the Kneaplers' defense has always been the very defense asserted in their answers: statute of limitations. (*See* D.E. 31–4.) In Exhibit 4, counsel for the Kneaplers states, "[O]ur defenses to the alleged taxes for [1993 and 1995] is whether the assessments were made within the appropriate statute of limitations ... In essence we do not contest the underlying facts for the assessment. Our issue is with the statute of limitations on assessment and collection." This statement was made several months after the United States filed its Complaint.

and the equitable remedy of recoupment may be applied to allow a credit to the taxpayer's estate where the statute of limitations for a refund claim has otherwise expired. *Id.* The Kneaplers, however, have not proffered any facts which, if true, would tend to show that they are seeking to reduce their tax liability for 1995 and 2004 by amounts paid on account of a *single* transaction. Even after the Court allowed extensive briefing on the proposed affirmative defenses and their effect on summary judgment (notwithstanding the close of discovery and the impending trial date), the factual question of why equitable recoupment would be appropriate in this case remains unanswered.

■ Setoff and payment also appear to be ineffective affirmative defenses. The Kneaplers have again put forth no facts tending to show that there has been an overpayment of tax in 1993. The Notice of Concession is not an admission by the United States that Stephen Kneapler has no liability for the 1993 tax year or that he overpaid; rather, the Notice of Concession is simply a statement by the United States that it no longer seeks to reduce to judgment the assessment made against Stephen Kneapler for additional taxes and penalties for 1993 in order to toll the time for collection. "Once a timely tax assessment has been made, the assessed tax must be collected within ten years after the date of assessment ... Unless the amount of the tax is collected by levy within the collection period, the [IRS] is required to commence an action in court to reduce the tax assessment to judgment in order to toll the period of limitations." MICHAEL I. SALTZMAN, IRS PRACTICE & PROCEDURE ¶ 5.07 (2009); *see also* 26 U.S.C. § 6502(a)(1). In other words, the Notice of Concession is only a statement that the United States no longer seeks to toll the collection period.

For the foregoing reasons, the Court finds that the motion to amend is untimely and the proposed affirmative defenses specious. Therefore, the undersigned declines to modify the Scheduling Order to allow the proposed amendments and denies Kneaplers' Motion for Leave to Amend.

## II. Motion for Summary Judgment

As stated above, the United States seeks to reduce to judgment the liabilities assessed against the Kneaplers for the taxable years 1995 and 2004. Specifically, the United States requests that judgment be entered in its favor and against Stephen Kneapler, individually, in the amount of $160,358.74 as of December 31, 2009, plus fees, interest, and all statutory additions thereafter as provided by law under 26 U.S.C. §§ 6601, 6621, 6622, and 28 U.S.C. § 1961(c) for unpaid federal income taxes for the 1995 year. The United States also seeks judgment against Stephen and Bryna Kneapler, jointly, in the amount of $290,602.69 as of December 31, 2009, plus interest and other additions that continue to accrue, for unpaid federal income taxes for the 2004 taxable year.

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The Supreme Court explained in *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir.1997); *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Envtl. Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981).[6] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505.

■ In reducing an assessment of a tax liability to judgment, the United States must prove that the assessment was validly made. *United States v. White,* 466 F.3d 1241, 1248 (11th Cir.2006). The submission of a Certificate of Assessment, Payment, and Other Specified Matters (also known as a Form 4340) establishes a presumption of that an assessment was properly made. *Id.* It then becomes the taxpayer's burden to prove that the assessment was erroneous in order to prevail. *Id.; Olster v. Comm'r,* 751 F.2d 1168, 1174 (11th Cir.1985).

Here, the United States has submitted Certificates of Assessment, Payments, and Other Specified Matters (the "Certificates") for the Kneaplers' unpaid federal income tax liabilities in 1995 and 2004 (D.E. 31–2 and 31–3). Accordingly, the assessments for 1995 and 2004 are presumptively valid, and the burden shift to the Kneaplers to overcome the presumption by establishing a genuine issue of material fact with respect to their liabilities. For the reasons discussed below, the Court finds that the Kneaplers have failed to establish an issue of fact, and their arguments to the contrary are unconvincing.

---

**6.** Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

First, the Kneaplers argue that the Court cannot enter judgment on the liabilities assessed for 1995 and 2004 because these amounts will be reduced if they prevail on the affirmative defenses they seek to assert. (Am. Resp. p. 2.) However, this does not constitute a basis upon which to deny the United States' Motion for Summary Judgment where the Court has denied the Kneaplers' Motion for Leave to Amend.

Second, the Kneaplers argue that the Declaration of Ivette Welch ("Welch"), dated January 6, 2010 (the "First Welch Declaration") and submitted as Exhibit 1 to the United States' Motion for Summary Judgment, is "insufficient." (Am. Resp. Memo. p. 12.) In relevant part, Welch declares that she has been assigned to the collection of the Kneaplers' unpaid taxes, that she has access to certain Internal Revenue Service ("IRS") computer records, that she conducted a search of the IRS records in her custody and control in connection with the Kneaplers' tax liabilities, that she computed the balance due from Stephen Kneapler for the 1995 tax year was $160,358.74 (as of December 31, 2009), and that she computed that the balance due from Stephen and Bryna Kneapler for the 2004 tax year at $290,602.69 (as of December 31, 2009). The Kneaplers argue that this declaration is insufficient because Welch is "neither the Revenue Agent who conducted the alleged audits, nor even an employee of the Examination Division of the Internal Revenue Service." (Am. Resp. Memo. p. 12.) Yet, the Kneaplers' audit is not at issue in this case. What is at issue is the validity of the assessment, which is the Kneaplers' burden to rebut.

In any event, the Court finds that Welch is competent to testify as to the tax liability computations and examination of IRS records that she conducted. The IRS records are admissible as business records pursuant to Rule 803(6) of the Federal Rules of Evidence. As the IRS officer who reviewed the records and computed the balances, she is undisputedly competent to testify as to the balances of tax liabilities for 1995 and 2004 because her computations and examinations are based on her personal knowledge. *See, e.g., U.S. v. Hamaker*, 455 F.3d 1316, 1331–32 (11th Cir.2006) (finding that a lay witness could testify based on his review and summary of financial documents); *U.S. v. Weaver*, 281 F.3d 228, 231 (D.C.Cir.2002) (finding that court did not plainly err in allowing a lay witness to testify on her findings based her personal review of financial documents); *Washington Ctr. R. Co. v. Nat'l Mediation Bd.*, 830 F.Supp. 1343, 1353 (E.D.Wash.1993) (stating that personal knowledge required for summary judgment affidavit may come from review of files and records). As such, her declaration is properly considered in resolving the Motion for Summary Judgment.

Third, the Kneaplers argue that there are issues of material facts concerning the assessment for the 1995 tax liability because Stephen Kneapler maintains that he has "no recollection of ever executing any agreement authorizing the Internal Revenue Service to make an assessment of additional taxes against him for such year" and because "the Government has not produced any document to the contrary." (Am. Resp. Memo. p. 13) (citing Stephen Kneapler Decl. ¶ 5. (D.E. 46–5.)) The Kneaplers misunderstand their burden. The United States has come forth with presumptively valid evidence (the Certificates of Assessment) and it is the *Kneaplers'* burden to rebut that evidence. The Kneaplers do not explain how Stephen Kneapler's failure to recollect any agreement affects or rebuts the presumptively valid Certificates of Assessment. And the Court does not find that Stephen Kneaplers' self-serving statement of "no recol-

lection," unsupported by any other evidence, creates a genuine issue of material fact in the face of the presumptively valid Certificates of Assessment—particularly where such statements are contradicted by other evidence on the record. (*See* Wein Declaration, D.E. 47–2 (providing documentation demonstrating that Stephen Kneapler, either himself or through his attorney, agreed to the assessments for 1995 upon appeal).)

Fourth, the Kneaplers argue that there are "enormous inconsistencies in the various amounts that the [IRS] alleges are owed for the taxable year 2004" and that summary judgment is improper where these discrepancies have not been explained or harmonized. (Am. Resp. Memo. p. 14, 16–17.) As a threshold matter, the Court points out that such errors in a Certificate of Assessment do not necessarily preclude summary judgment. *See United States v. White,* 466 F.3d 1241, 1248–49 (11th Cir.2006) (finding that the taxpayer failed to prove the assessment was erroneous by simply identifying errors on the Certificates of Assessment where the errors did not address the issue of whether the IRS has miscalculated the amount it claims the taxpayer owes). Regardless, the United States has indeed "harmonized" the numerical discrepancies identified by the Kneaplers. For example, the Kneaplers complain that the 2004 tax year balance identified in the First Welch Declaration is different from the balance indicated in a notice Stephen Kneapler received from the IRS back in October 2009. The United States explains, with a supporting declaration from Welch (D.E. 47–1, the "Second Welch Declaration"), that the discrepancy arises from inadvertent error in the IRS system relating to a "hold" on failure to pay penalties that applied to certain taxpayers affected by Hurricane Katrina. Welch recognized that the "hold" on the Kneapler's failure to pay penalties had not been timely released and corrected this error before she filed her first declaration. (Reply 4–5.) Therefore, the Court finds that these purported numerical discrepancies do not create a genuine issue of material fact and notes, perhaps more importantly, notes that the Kneaplers *do not contest the actual balance of unpaid tax indicated in the First Welch Declaration.*

The Kneaplers next argue that the figures in the "amounts in the 'Command Code INTST' print outs," attached to the First Welch Declaration are "demonstrably wrong" because "they fail to take into account the abatements of tax … as shown on the Certificates of Assessments and Payments[.]" (Am. Resp. Mem. p. 15.) The United States explains, however, that the calculations were correct and the abatements were included, but that the 'INTST print outs' do not reflect the actual abatement figures. (Reply p. 5.) The fact that the abatements were considered is supported by the Certificates of Assessment, which reflect these figures. (*See* Ex. 2 to the United States' Motion for Summary Judgment, pp. 12–18.) In any event, the fact that the 'print out' does not actually list the abatements does not create a genuine issue of material fact if the ultimate amount of the assessment is correct (*i.e.,* the abatements were actually considered). And, again, the Kneaplers *do not contest the actual balance of unpaid tax indicated in the First Welch Declaration.*

Finally, the Kneaplers argue that the Notice of Concession "creates an immediate issue with respect to the well over $200,000 that the Government has collected from Mr. Kneapler and applied against such now-conceded liability." (Am. Resp. Memo. p. 17.) Yet, as the Court already stated above, the Notice of Concession did not "immediately create an issue"—if there were issues of overpayment, then

such issues existed when the tax was paid and should have been raised at the pleading stage, which the Kneaplers failed to do. Accordingly, the issues the Kneaplers now seek to raise are not properly before the Court, and, therefore, the Notice of Concession does not create a material issue of fact that precludes summary judgment.

For the foregoing reasons, the Court finds that the assessments for taxable years 1995 and 2004 were properly made. Accordingly, the Court grants the United States' Motion for Summary Judgment.

### III.  Motion to Strike

Almost three weeks after the United States filed its Reply brief in support of its Motion for Summary Judgment, the Kneaplers filed their Motion to Strike (i) the First Welch Declaration (attached to the United States' Motion to Dismiss), (ii) the Second Welch Declaration (attached the United States' Reply brief), and (iii) the Jay Wein declaration, dated March 2, 2010 (also attached to the United States' Reply brief). The Kneaplers essentially argue that these three declarations fail because they do not state that they are based on personal knowledge and because they purportedly contain inadmissible hearsay.

■   Rule 56(e) of the Federal Rules of Civil Procedure provides that an affidavit made in support of a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matter stated. A court may strike inadmissible portions of an affidavit and consider the rest. *See, e.g., Lee v. Nat'l Life Assurance Co. of Canada,* 632 F.2d 524 (5th Cir.1980).

#### A.  The First Welch Declaration

The Court has already addressed and rejected the Kneaplers' argument that the First Welch Declaration fails because it is not based on personal knowledge. Further, the Court has only relied on the First Welch Declaration to the extent that Welch represents that the Kneaplers have not fully paid the federal taxes assessed against them for the 1995 and 2004 taxable years and the balance of the tax liabilities owed. Welch, as the collection officer assigned to the Kneaplers' case, conducted the review of the IRS records and underlying balance calculations herself. (Welch Decl. ¶¶ 1, 8.) The Kneaplers continue to argue, however, that the First Welch Declaration should be stricken because the exhibits attached to it, which are the "Command Code INTST" print outs," constitute inadmissible hearsay. (Motion p. 8.) The Command Code INTST print outs are the computer print outs reflecting Welch's calculations.

■   As an initial matter, the Court does not rely on the Command Code INTST print outs in arriving at its decision on the United States Motion for Summary Judgment and its finding that the assessments for unpaid taxes were valid. But in any event, the print outs fall within the business records exception to the hearsay rule and Welch, as the person who generated the records as part of her duties as the person assigned to collection of the Kneaplers' unpaid taxes, is qualified to testify that the print outs were created and maintained within the ordinary course of business. The Eleventh Circuit has held that a district court may consider hearsay statements if it is evidence that could be "reduced to admissible form" at trial. *Macuba v. Deboer,* 193 F.3d 1316, 1322–24 (11th Cir.1999). Here, it is apparent that the "Command Code INTST" print outs" could be reduced to admissible form at trial. On the face of the record, there is nothing that indicates the print outs are unusual or not kept in the ordinary course of business.

Finally, the Kneaplers argue that the First Welch Declaration should be stricken because Welch's computations "failed to taken into account the additional suspension period for interest and failure to pay penalties, due to Hurricane Wilma. . . ." (Motion pp. 9–10.) Even if the Court were to assume this as true, the Kneaplers provide no authority to support the proposition that a disagreement about the contents of a sworn declaration is grounds to strike that declaration. Instead, this argument appears to be nothing more than a belated attempt to create a genuine issue of material fact where the Kneaplers neglected to first advance this argument in their Amended Response to the United States' Motion for Summary Judgment. Further, the Court finds their argument specious in light of the United States' Reply brief, which explains that the Kneaplers' tax return was never in fact eligible for the suspension period due to Hurricane Wilma. (Reply pp. 2–3.) For all the foregoing reasons, the Court denies the Kneaplers' request that the First Welch Declaration be stricken.

### B. The Second Welch Declaration

■ The United States supplies the Second Welch Declaration as part of its Reply brief on its Motion for Summary Judgment to explain why the balances of unpaid taxes due in the Complaint were different from the balances in the October 19, 2009 notice sent to the Kneaplers—a discrepancy that the Kneaplers complained of in their Amended Response to the United States' Motion for Summary Judgment. In their Motion to Strike, the Kneaplers argue that this Second Welch Declaration should be stricken because Welch does not assert the "basic fundamental requirement that she has personal knowledge of the facts contained in such Declaration, thereby failing the first of the Rule 56(e) hurdles." (Motion p. 9.) Yet it is clear that the declarations contained in the Second

Welch Declaration are based on Welch's personal knowledge—that is, she explains that she herself (i) computed the balances of unpaid taxes due, (ii) examined IRS records, (iii) discovered that the failure to pay penalty due from the Kneaplers was incorrect because the limited "hold" placed on such penalties after Hurricane Katrina had not been released, and (iv) calculated the corrected failure to pay penalty after accounting for the incorrect "hold."

The Kneaplers also complain that Welch's handwritten computations attached to her Second Declaration should not be considered because they are unclear, that the failure to pay penalty she calculated is not entered onto the correct line of Command Code INTST print outs, that she does not adequately explain her authority to make such calculation, and that she does not adequately explain her computation of the failure to pay penalty in the First Welch Declaration. (Motion pp. 10–12.) However, the Kneaplers do not explain how these purported problems render the Second Welch Declaration inadmissible. Moreover, the Kneaplers do not contend that her computations themselves were arbitrary or without any foundation. *See Olster v. Comm'r,* 751 F.2d 1168, 1174 (11th Cir.1985) ("Absent a finding that the computational methods used, *and therefore the assessment,* was arbitrary and without foundation, the tax deficiency is presumptively correct." (emphasis added)). And again, the Court notes that while the Kneaplers posit that the truth and accuracy of Welch's computations are "undermined," they do not contest that the *balances* of unpaid taxes contained in the First Welch Declaration are incorrect, arbitrary, or without foundation.

For all the foregoing reasons, the Court denies the Kneaplers' request that the Second Welch Declaration be stricken.

### C. The Wein Declaration

The United States also attaches the Wein Declaration to its Reply brief on its Motion for Summary Judgment to refute Stephen Kneapler's assertion that he "has no recollection of ever executing any agreement authorizing the Internal Revenue Service to make an assessment of additional taxes against him." (Reply Brief p. 2.) To the contrary, the Wein Declaration states that the Kneaplers appealed the proposed adjustments of their 1993 and 1995 tax returns to the IRS Appeals Office and that the closing record on the case indicates that Stephen Kneapler, individually or through his attorney, agreed to the assessment against him for 1995. (Wein Decl. ¶¶ 3–4.) Jay Wein, the declarant, was the IRS Appeals Officer assigned to the Kneaplers' case. (Wein Decl. ¶¶ 1–2.)

The Kneaplers argue that the Wein Declaration should be stricken because it fails to state that it was made based on personal knowledge. (Motion p. 12.) Yet, Wein personally handled the Kneaplers' appeal and testified about his actions in connection therewith. Further, Wein testifies about the contents of the closing record based on a search he conducted himself. Indeed, personal knowledge can come from a review of the contents of business files and records. *See In re Trafford Distrib. Cntr., Inc.*, 414 B.R. 858, 863 (Bankr.S.D.Fla.2009); *Washington Ctr. R. Co. v. Nat'l Mediation Bd.*, 830 F.Supp. 1343, 1353 (E.D.Wash.1993) (stating that personal knowledge required for summary judgment affidavit may come from review of files and records). Moreover, the Court rejects the notion that the declaration fails simply because it does not contain the magic words, "This is based on my personal knowledge."

Finally, the Kneaplers point out that Wein does not explain why Bryna Kneapler's name and the 1993 tax year are not reflected on the closing record. However, it is unclear why the Kneaplers contend that this lack of explanation should somehow render the declaration inadmissible.

For all the foregoing reasons, the Court denies the Kneaplers' request to Strike the Wein Declaration.

### Conclusion

ORDERED AND ADJUDGED that the Kneaplers' Motion to Amend (D.E. 41) is DENIED. It is further

ORDERED AND ADJUDGED that the Kneaplers' Motion to Strike (D.E. 48) is DENIED. It is further

ORDERED AND ADJUDGED that the United States' Motion for Summary Judgment (D.E. 31) is GRANTED. The United States SHALL file a proposed Final Judgment within five (5) days from the date of this Order.