[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 11, 2006
THOMAS K. KAHN
CLERK

No. 05-15857

_____

D. C. Docket No. 04-01901-CV-MHS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

JAMES W. WHITE,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Northern District of Georgia

_____

**(October 11, 2006)**

Before ANDERSON, HULL and CUDAHY,* Circuit Judges.

ANDERSON, Circuit Judge:

_____
        * Honorable Richard Cudahy, United States Circuit Judge for the Seventh Circuit, sitting
by designation.

The United States appeals the invalidation of its assessment of a tax liability against James White following confirmation of White's Chapter 11 bankruptcy plan. We reverse and direct entry of summary judgment for the Government.

## I.  BACKGROUND

A.    <u>Facts</u>

White was president and sole shareholder of WCC, Inc.  On May 3, 1993, White filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. The bankruptcy court confirmed his reorganization plan on May 18, 1994.  The plan provided that the title and ownership of the estate's assets would revest in White as of the "Effective Date," defined as "the date sixty (60) days following the date after which the Order of Confirmation is no longer subject to appeal and on which date no such appeal is pending," or July 17, 1994.  The final decree was entered in White's Chapter 11 proceeding on December 12, 1994.

On July 4, 1994, the IRS assessed a liability in the total amount of $109,724.30 pursuant to I.R.C. § 6672 against White for willfully failing to pay the IRS the income and social security taxes required to be withheld from his employees' paychecks.  The IRS later sued White for collection in the Northern District of Georgia.

2

On May 3, 2005, the district court entered judgment for White and the Government timely filed this appeal.

B.       Statutory Framework

Before discussing the merits of the parties' arguments, it will be useful to outline statutory provisions which were in effect and governed the 1994 events in this case.[1]  A debtor who has filed for Chapter 11 bankruptcy enjoys an automatic stay against actions to enforce, collect, assess or recover claims against the debtor or against property of the estate.   11 U.S.C. §362(a).  It is the law of this Circuit that "[a]ctions taken in violation of the automatic stay are void and without effect."   Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1308 (11th Cir. 1982).  Section 362(c)(1) provides that the stay of an act against the property of the estate continues until such property is no longer property of the estate.  Section 362(c)(2) provides that the stay of any other act continues until the earliest of (A)

---

[1]       We note that the precedential scope of our holding is quite limited.  After White filed his bankruptcy petition, the statutory provisions relevant to this case were amended so that the specific questions presented in this appeal no longer arise under the amended versions.  In 1994, Congress amended 11 U.S.C. §362 so that debtors could no longer enjoy an automatic stay against tax assessments.  An even later amendment would have affected another issue in this case.  In 2005, §1141 was amended so that, for individual debtors, "unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan." 11 U.S.C. §1141(d)(5).  Because these amendments were not in effect when White filed his bankruptcy petition and because they do not have retroactive effect, we confine our inquiry to the pre-amendment versions of the statutes.

the time the case is closed, (B) the time the case is dismissed, or (C) the time a discharge is granted.

This case involves the application of § 362(c)(2)(C) providing that the automatic stay is lifted at the time a discharge is granted.[2] The discharge of the debtor here was effected by confirmation of the plan pursuant to 11 U.S.C. §1141(d)(1)(A). Section 1141(d)(1)(A) provides that except as otherwise provided in the plan, the confirmation of the plan discharges the debtor.[3]

## II.  DISCUSSION

We review a district court's grant of summary judgment de novo. Morris Communications Corp. v. PGA Tour, Inc., 364 F.3d 1288 (11th Cir. 2004). The district court held that the IRS' assessment of White's tax liability was void because it was made while White enjoyed an automatic stay against collection of

---

[2]     Of course, under current law, the automatic stay would have no effect on tax assessments.  See 11 U.S.C. §362(b)(9) (1994).

[3]     Section 1141(d)(1)(A) provides as follows:

> (d)(1)(A) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan –
>
> (A) discharges the debtor from any debt that arose before the date of such confirmation.

As noted above, the 2005 amendment (delaying discharge until completion of payments under the plan) is not applicable in this case.

4

the tax.[4]  White makes basically three arguments in support of the district court's ruling: (A) that the district court correctly held that the confirmation of White's reorganization plan, although it discharged the debtor, had no effect on the automatic stay with respect to the tax because the tax was a non-dischargeable debt; (B) that the automatic stay remained in effect and the assessment was thus void because the effective date of the plan was delayed until after the assessment;[5] and (C) that the district court correctly held alternatively that the assessment was an act against the property of the estate and thus the automatic stay continued until the property revested in the debtor which occurred upon the effective date of the plan (i.e., after the assessment), all of which meant that the automatic stay continued until after the assessment and thus the assessment was void.  We address and reject each argument in turn, and reverse the district court.[6]

---

[4]     Because the district court held that the IRS' July 4, 1994, assessment of the tax was void as a violation of the automatic stay, and because the IRS made no subsequent assessment, the district court also ruled that the statute of limitations barred any assessment. However, the district court's statute of limitations ruling was dependent upon its holding that the assessment was void.  Our holding that the IRS' assessment was valid means that the district court also erred with respect to its statute of limitations holding.

[5]     The district court did not rely upon this argument.

[6]     Our analysis focuses primarily on the language of the relevant statutory provisions.  However, our analysis is supported by the only case which we have located that is squarely on point.  See Gehri v. United States, 78 AFTR2d 96-6711 (B.A.P. 9th Cir. 1996) (unpublished) (holding that IRS could validly assess a tax after confirmation of the plan of reorganization discharged the debtor and lifted the automatic stay).

A. The District Court Erred in Holding that the Automatic Stay Against Collection of Non-dischargeable Debts is Not Terminated After a Grant of Discharge.

As noted above, the relevant statutory provisions provide that confirmation of the plan discharges the debtor,[7] and that discharge of the debtor lifts the automatic stay.[8] White argues, and the district court so held, that the confirmation of the plan in this case, and the consequent discharge of the debtor, had no effect at all with respect to the instant tax because the instant tax is a non-dischargeable debt. In other words, White argues that, although the debtor was discharged with respect to dischargeable debts, the discharge had no effect at all with respect to the instant non-dischargeable taxes. This position finds no support in the case law, and, indeed, is contrary to the law of this Circuit. It is generally recognized that once confirmation has been entered, and a discharge granted, holders of non-dischargeable debts can seek repayment from the debtor for the original amount. See In re Gurwitch, 794 F.2d 584, 585-86 (11th Cir. 1986) (allowing the IRS to seek collection of tax liabilities after confirmation of bankruptcy plan and before closure of the case); see also In re DePaolo, 45 F.3d 373, 375 (10th Cir. 1995)

---

[7] Section 1141(d)(1) provides: "Except as otherwise provided ... in the plan ..., the confirmation of a plan – (A) discharges the debtor ...."

[8] Section 362(c)(2) provides that "the stay of any other act ... continues until the earliest of – ... (C) ... the time a discharge is granted ...."

("The party to whom [a nondischargeable] debt is owed is entitled after confirmation to enforce his or her rights as they would exist outside of bankruptcy.") (internal citations omitted).

In addition, the rule suggested by the district court contradicts a plain reading of the relevant statutes. Section 1441 of the Bankruptcy Code states that "the confirmation of a plan . . . discharges the debtor from any [dischargeable] debt" and it does not make the discharge contingent upon the types of debts the debtor owes. A debtor cannot receive different discharges for different types of debt but can be granted only a single discharge applicable to all debts. In re Cardillo, 172 B.R. 146, 151 (Bankr. N.D.Ga. 1994). Confirmation of a bankruptcy plan grants the debtor a discharge that replaces the automatic stay with a permanent injunction pursuant to §524 of the Bankruptcy Code.[9] But that injunction prohibits collection only with respect to dischargeable debts and does

---

[9] The statute reads in relevant part:

>    (a) A discharge in a case under this title–
>    . . .
>    (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any . . . debt [discharged under section 727, 944, 1141, 1228, or 1328 of this title] as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. §524.

7

not apply to nondischargeable debts.   Thus, once a plan has been confirmed,

holders of nondischargeable debts can generally pursue collection unless the plan

has provided otherwise or unless the court otherwise orders.


        B.      <u>The Plan Did Not Provide for the Effective Date to be the Date of Discharge.</u>

The validity of the IRS' assessment depends upon whether a discharge was

granted on the date of the plan's confirmation, May 18, 1994, which was prior to

the date of assessment, July 4, 1994. The plan did not contain any provisions

explicitly stating that the discharge would take place after confirmation, but the

plan did say that it would take effect sixty days after the Order of Confirmation

could no longer be appealed, i.e. July 17, 1994.  Thus, we must determine whether

a discharge was granted upon confirmation of the plan or upon the plan's effective

date.  We conclude that a plan's identification of a post-confirmation effective

date is not sufficient to delay the grant of discharge.

We begin by noting that the statutory language does not explicitly refer to

an effective date.[10]   It does, however, allow that confirmation of a plan need not

_____

[10]   Section 1141 reads in relevant part:

Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan–

8

grant the debtor a discharge if the plan provides otherwise.  Thus, White can

prevail only if the plan's stipulation of a post-confirmation effective date satisfies

the "otherwise provided" condition.   We hold that it does not.

First, we note that while the Bankruptcy Code makes numerous references

to the effective date of the reorganization plan, it does not in the instant provision.

 If the plan could delay the grant of discharge merely by having a post-

confirmation effective date, then Congress' statement that "the confirmation of a

plan . . . discharges the debtor from any debt  . . ." would be in error.  The reason

is that, under this interpretation of § 1141(d)(1), confirmation of a plan would

discharge debts only when the plan takes effect upon confirmation.  That is to say,

the triggering event for discharge would not actually be the plan's confirmation

but the plan's taking effect.   Because of the Bankruptcy Code's numerous

references to the reorganization plan's effective date elsewhere, we should assume

that had Congress intended to condition discharges on a plan's taking effect, it

would have done so explicitly.  <u>See, e.g.</u>, <u>Nunnally v. Equifax Information</u>

---

(A)     discharges the debtor from any debt that arose before the date of
such confirmation . . .

11 U.S.C. § 1141(d)(1) (1993).  As noted above, the 2005 amendment, 11 U.S.C. §1141(d)(5)
(2005) (no longer allowing confirmation itself to serve as discharge for individual debtors), is not
applicable to this case.

Services, L.L.C., 451 F.3d 768, 774 (11th Cir. 2006) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") quoting Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 300 (1983). Thus, it would seem contrary to Congress' intent to hold that confirmation of the plan did not grant White a discharge.[11]

Second, our interpretation of §1141 is consistent with the policy aims behind the Bankruptcy Code's identification of taxes as nondischargeable debts. Nondischargeable debts are those types of debts, such as taxes or child support payments, that Congress thought important enough to be paid in full, even if doing so impeded the debtor's ability to make a fresh start. "It is apparent to us that Congress has made the choice between collection of revenue and rehabilitation of the debtor by making it extremely difficult for a debtor to avoid payment of taxes under the Bankruptcy Code." Gurwitch, 794 F.2d at 585-86. Thus, it makes sense that Congress would generally intend for those debts to be collected sooner rather than later.

---

[11] On the basis of this argument, we also reject White's contention that because the plan relies on assets outside of the property of the estate, such as after-acquired income, to repay debt holders, it implicitly contemplates discharge only upon its consummation. If Congress had intended to condition discharge on a plan's completion, rather than its confirmation, it presumably would have said so.

It is true that a plan can delay the payment of nondischargeable debts, but such provisions require the approval of the bankruptcy judge who must consider the merits of such provisions in deciding whether to confirm the plan. But we cannot conclude that court approval of a post-confirmation effective date necessarily entails a further approval of delayed payments to holders of nondischargeable debts. The merits of allowing a debtor to delay payments to holders of debt pursuant to the bankruptcy plan, and the merits of allowing the same debtor to delay payments to holders of nondischargeable debt are quite different. As indicated above, payment of nondischargeable debts has priority.

Finally, holders of debts pursuant to the plan face formal constraints that holders of nondischargeable debts do not. Holders of debt pursuant to the plan cannot move for collection until the plan becomes effective because the plan defines their rights and the terms of repayment. But by definition, holders of nondischargeable debts need not rely on the terms of the plan to vindicate their rights to collection. In addition, if such creditors hold debts against the debtor, rather than the estate, they can rely on assets not in the estate for payment, such as the debtor's after-acquired income, and so need not wait until the effective date, when the bankruptcy estate will revest in the debtor. As discussed in the next section, the IRS assessment was an action against White's person, not the estate,

11

and so the IRS' right of collection was not dependent upon the plan's having taken effect.

C.     <u>The Assessment was Made Against White's Person, Not His Estate</u>

White argues, and the district court agreed in an alternative holding, that the IRS assessment is invalid because it was made before the plan revested the estate in him. This fact is not significant, however, because the tax assessment was made against White's person, not the estate.[12] <u>In re Armstrong</u>, 217 B.R. 192, 195 (Bankr. N.D. Tex. 1997). While § 362(c)(1) provides that an automatic stay of acts against property of the estate will not be terminated until the property is no longer part of the estate, § 362(c)(2) provides that a discharge can terminate the automatic stay with respect to acts against the debtor, regardless of whether the debtor has been vested with the estate.[13]

---

[12] This distinguishes the instant case from <u>In re Wills</u>, 226 B.R. 369, 375n.6 (Bankr. E.D.Va. 1998). <u>Wills</u> held that the automatic stay was not lifted until the effective date of the plan, rather than the confirmation date, because the effective date was when the estate revested in the debtor. <u>Wills</u> involved an act taken before the effective date that was against the estate, not the debtor; the creditor had sold stock that guaranteed a loan the creditor had made to the debtor. In contrast, the IRS assessment in question was made against White, not the estate.

[13] 11 U.S.C. 362(c) reads in relevant part:

> (1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;

An IRS tax assessment is clearly an action against a debtor. It is not a levy against property but merely a bookkeeping entry noting a taxpayer's delinquency. After the assessment, the taxpayer is provided with notice and a demand for payment. If the taxpayer remains delinquent, then the IRS may proceed against the debtor's property. As the government recognizes, this means that the IRS cannot proceed against property in the bankruptcy estate because the debtor does not yet own that property. But in this case, the IRS has not taken any action against the property of the estate. Instead, it has only made an assessment against White. Thus § 362(c)(1) is inapplicable.

D.   <u>The Government Is Entitled to Summary Judgment Because White's Failure to Pay Taxes Was Willful And Because Its Assessments Were Not Erroneous</u>

---

(2) the stay of any other act under subsection (a) of this section continues until the earliest of--

   (A) the time the case is closed;

   (B) the time the case is dismissed; or

   (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

The term, "any other act" in § 362(c)(2) means acts other than acts against the property of the estate. Thus, the term, "any other act," includes acts against the debtor.

13

Having decided that the IRS assessment is valid, we further conclude that the Government is entitled to summary judgment.

1.      White has adduced no evidence to disprove willfulness.

It is undisputed that as the president of WCC, Inc., White was responsible for withholding and paying to the IRS the income and social security taxes of his employees. Though a "responsible person" under § 6672, White may avoid liability if he can prove that his failure to pay was not willful. See, e.g., Williams v. United States, 931 F.2d 805, 810 (11th Cir. 1991) ("Once an individual is established as a 'responsible person,' he has the burden of disproving willfulness.") (internal citations omitted). White has adduced no evidence to disprove willfulness and thus, the Government is entitled to prevail on this claim.

2.      The IRS assessment was not erroneous.

In reducing an assessment to judgment, the Government must first prove that the assessment was properly made. Palmer v. United States, 116 F.3d 1309, 1312 (9th Cir. 1997). The Government's submission of a Form 4340 establishes such a presumption. Roberts v. C.I.R., 329 F.3d 1224, 1227 (11th Cir. 2003). Once the Form is provided, the taxpayer must then prove that the assessment is erroneous in order to prevail. Stallard v. United States, 12 F.3d 489, 493 (5th Cir.

14

1994).  We conclude that White has not rebutted the Form 4340's presumption of validity.

While White identifies several purported errors in the Form, none of them seriously impeach the accuracy of the Government's allegations.  The most obvious error in the Form 4340 is its showing of a final balance of $0.  The reason for the erroneous balance was an error in the computer program that had completed the form.  The computer program assumed that the statute of limitations had expired because it did not recognize that White's automatic stay had delayed the running of the statute of limitations.  Thus, the final balance is little more than a typographical error.  White has offered no evidence to suggest that the preceding entries themselves, listing the unpaid taxes, are incorrect.

As for the other alleged deficiencies in the Form to which White has pointed – such as the one-digit discrepancy between White's Social Security number as listed on the Certificate of Assessment itself and the number as listed on the Certificate of Official Record, certifying the assessment – they are similarly insignificant and do not address the issue of whether the IRS has miscalculated the amount that it claims White owes.

We also reject White's contention that the IRS is required to provide a Form 4340 for every quarter that it claims taxes were delinquent.  Instead, a Form for the most recent quarter with a total for the delinquencies of the past quarters is

sufficient for the Government to meet its burden of proving the validity of its assessment.  See Purcell v. United States, 1 F.3d 932, 940-41 (9th Cir. 1993) (holding same).

## III.  CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand with instructions to enter summary judgment for the Government.

REVERSED.