[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 11-12811 & 11-12975
Non-Argument Calendar

_____

D.C. Docket No. 8:09-cv-00384-SDM-TGW

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILLIAM O'CALLAGHAN,
ANNA MARQUES,

Defendants - Appellants,

PRIVATE FUNDING SERVICES GROUP, INC.,
JPMORGAN CHASE BANK, N.A.,
as successor by merger to Washington Mutual Bank,

Defendants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(December 6, 2012)

Before WILSON, JORDAN and ANDERSON, Circuit Judges

PER CURIAM:

William O'Callaghan, Anna Marques, and Private Funding Service Group, Inc. (hereinafter collectively referred to as "Appellants") appeal the district court's grant of summary judgment in favor of the United States (the "Government") in its civil action to reduce to judgment federal tax assessments levied against O'Callaghan, foreclose tax liens held by the Government against O'Callaghan's home, and order the home sold in partial satisfaction of O'Callaghan's outstanding federal income tax liabilities.  Appellants argue that the Government was not entitled to summary judgment because it failed to prove (1) that it mailed O'Callaghan a notice of deficiency, and (2) that it mailed O'Callaghan the notice of assessment and demand for payment requisite to the existence of a valid lien. Finding no error, we affirm.

## I.  Background

The instant dispute stems from assessments levied by the Internal Revenue Service ("IRS") against O'Callaghan for tax years 1981, 1982, and 1983.[1]  IRS records show that it did not receive O'Callaghan's federal income tax returns for

---

[1]Appellants' brief also makes tangential reference to the IRS's alleged failure to send O'Callaghan the required statutory notices for tax years 1999, 2000, and 2001.  Appellants failed to make this argument below, however, and we have "repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (internal quotation marks omitted).  At any rate, Appellants' argument regarding lack of notice for years 1999–2001 fails for the same reasons set forth below and applicable to 1981–83.

the years 1981–83 until mid-1986, well past the regular filing deadline. In the district court, O'Callaghan claimed that he timely filed his returns in each of those years, but he provided no evidence to support this assertion. The only tax return in the record, the 1981 return, shows O'Callaghan's address as 425 East 84th Street, 4A, New York, NY 10028 (the "New York address").

The IRS assessed tax liabilities in addition to penalties and interest for the late-filed 1981–83 tax returns. It further initiated an audit of O'Callaghan's returns for those years and assigned Evelyn Tavares to conduct the investigation. Tavares's work notes from the investigation indicate that she telephoned or attempted to visit O'Callaghan some 14 times during her investigation; each time he either failed to respond, was on the other line, was on vacation, or was otherwise unable to set up a meeting with her. O'Callaghan denies ever having spoken to Tavares. Nonetheless, because he did not substantiate the claimed deductions for any of the years at issue, Tavares disallowed them. On February 8, 1989, the IRS sent a notice of income tax deficiency to O'Callaghan at the New York address and to Post Office Box 1947, Grand Central Station, New York, NY 10163 (the "P.O. Box address"), an address allegedly provided to Tavares by an individual claiming to be O'Callaghan's wife during one of Tavares's many

3

attempts to contact O'Callaghan.[2]

When it received no response to its notice of deficiency, the IRS assessed the additional taxes, interest, and penalties imposed following Tavares's investigation in 1989 and sent notice of said assessments to O'Callaghan. O'Callaghan had, however, filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York in 1987, and these 1989 assessments were therefore made in violation of the automatic stay required by 11 U.S.C. § 362(a). The IRS consequently abated the 1989 assessments. When the New York bankruptcy was discharged in 1993, the IRS reassessed the previously abated federal income tax, interest, and penalties, and sent O'Callaghan notice of these second assessments.

O'Callaghan denies ever having received any notice of deficiency or notice of assessment from the IRS, and claims he first learned of his tax liabilities in 1990 when an IRS revenue officer phoned him to solicit payment and allegedly told him that the time to appeal the assessments had lapsed. In fact, the time for challenging the assessments in the Tax Court did not lapse until 150 days after the bankruptcy was discharged on June 16, 1993. *See* 26 U.S.C. § 6213(f)(1)

---

[2]Though O'Callaghan is apparently unmarried, he states in his answer that he and Appellant Anna Marques "have lived together, as common law man and wife, since 1991."

4

(suspending the 90-day period for a petition to the Tax Court during the pendency of a bankruptcy petition and for 60 days thereafter).  O'Callaghan did not challenge the assessments within the prescribed time period.

On June 29, 1994, subsequent to the IRS's reassessment of the 1981–83 tax liabilities, O'Callaghan purchased the home at 738 Mandalay Avenue, Clearwater, Florida (the "Clearwater property") that forms the basis for the instant action of foreclosure by the Government.[3]  The IRS filed a federal tax lien upon the Clearwater property on April 4, 1995, for the $2,018,481.91 in total outstanding tax liabilities owing, and duly noticed O'Callaghan of the lien.[4]  In June 1995 and November 1997, presumably prompted by the imposition of the lien upon his home, O'Callaghan submitted two offers in compromise to the IRS (one for $10 and one for $113,500), both of which were rejected.

O'Callaghan's personal liability for the 1981–83 taxes was discharged as the result of a petition for Chapter 7 bankruptcy filed in the Middle District of Florida on September 10, 1999.  The bankruptcy court, however, held that the discharge of O'Callaghan's personal obligations had no effect on the *in rem*

_____

[3]JP Morgan Chase Bank, N.A., held a mortgage on the Clearwater property at the time of suit and was therefore joined as a defendant, but did not answer the complaint or otherwise participate in the litigation.

[4]The IRS re-filed the lien in April 2004 to prevent it from lapsing.

5

obligations imposed upon the Clearwater property by the federal tax liens: "[T]he prepetition tax lien of the IRS survived the Debtor's Chapter 7 case, even though the Debtor received a discharge of his personal liability for the tax debts." *In re O'Callaghan*, 342 B.R. 364, 367 (Bankr. M.D. Fla. 2006) (citing *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 778 (1992)).

In the meantime, O'Callaghan again failed to file federal income tax returns in 1999, 2000, and 2001. The IRS made notice of assessments and demands for payment, and when O'Callaghan did not satisfy them in full the Government imposed additional liens against the Clearwater property for these debts on top of those already outstanding for the 1981–83 period.

In October 2006, O'Callaghan quitclaimed his interest in the Clearwater property to himself and Appellant Marques as joint tenants with rights of survivorship. Finally, on September 24, 2007, Appellant Private Funding Services Group, Inc. recorded a mortgage in the amount of $265,000 against the Clearwater property.

The Government brought suit in March 2009 to reduce its assessments to judgment, foreclose the federal tax liens for 1981–83 and 1999–2001, and to force the sale of the Clearwater property in satisfaction of O'Callaghan's tax debts. Following discovery, the parties cross-moved for summary judgment. In support

6

of its motion, the Government offered certified copies of the Certificates of Assessments and Payments ("Forms 4340":) for the 1981–83 and 1999–2001 tax years, as well as copies of O'Callaghan's 1981 federal income tax return, the 1989 notice of deficiency addressed to O'Callaghan's New York address, the notice of federal tax lien, and the declarations of Tavares, IRS Group Manager of Technical Services Kathleen Herr, and IRS Revenue Officer Ray Zacek.

The summary judgment motions were referred to the magistrate judge for a report and recommendation. After a hearing, the magistrate judge recommended that the Government's summary judgment motion be granted and that O'Callaghan's be denied. He rejected O'Callaghan's attacks on the assessments and liens as either "frivolous" or "unmeritorious." With regard to the procedural deficiencies that form the heart of the instant appeal, the magistrate judge found that the Government had established proper mailing of the notice of deficiency and ensuing assessment, and that O'Callaghan had failed to rebut the presumption of validity attendant to IRS Forms 4340.

The district court adopted the magistrate judge's "thorough and proper" report and recommendation. He ordered the federal tax liens for years 1981–83 foreclosed and authorized the sale of the Clearwater property. The instant appeal followed.

7

## II.  Standard of Review

We review the district court's grant of summary judgment *de novo*, applying the same legal standards as the district court.  *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).  We will affirm if, viewing the evidence in the light most favorable to the nonmoving party, the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263–64 (11th Cir. 2010).  Though the nonmoving party can survive summary judgment by demonstrating that there exists some issue of fact to be decided at trial, "[a] mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment."  *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004) (citation omitted).

## III.  Discussion

When the IRS determines a deficiency in income taxes, it must send a notice of deficiency via registered or certified mail to the taxpayer's last-known address.  26 U.S.C. § 6212(a); *see* 26 C.F.R. § 301.6212-1(a).  The taxpayer then has 90 days to file a petition in the Tax Court challenging the deficiency.  26 U.S.C. § 6213(a).  If the taxpayer is in bankruptcy when the notice of deficiency issues,

the 90-day period is suspended for the pendency of the bankruptcy and for 60 days thereafter. 26 U.S.C. § 6213(f)(1). Once the time for appeal to the Tax Court has lapsed, the Government may then assess the taxpayer for the amount contained in the notice of deficiency. 26 U.S.C. § 6213(c). Within 60 days of making such an assessment, the Government must send a notice of assessment and demand for payment to the taxpayer's last-known address. 26 U.S.C. § 6303(a). If the taxpayer thereafter fails to pay the deficiency, a lien arises "in favor of the United States upon all property and rights to property . . . belonging to such person." 26 U.S.C. § 6321. The Government may enforce liens either through administrative collection methods such as levy and disraint, 26 U.S.C. §§ 6331–6340, or, as in the extant case, through a civil action in district court to reduce the deficiency to judgment and to foreclose the tax lien, 26 U.S.C. §§ 7401–7401.

### 1. Notice of Deficiency

O'Callaghan first argues that the Government lien for the unpaid 1981–83 tax-year liabilities is void because the IRS did not mail him the notice of deficiency requisite to a valid assessment and lien. He contends that the copy of the notice of deficiency sent to his New York address and offered by the government lacks credibility because it was discovered late in the litigation; he further submits that the true notice of deficiency was sent to the P.O. Box address

9

rather than his last-known address (the New York address), as the statute requires. *See* 26 U.S.C. § 6312. He claims that the Government maintains a record of registered and certified mailings in its Form 3877, and that the Government's failure to produce its Form 3877 for the notice of deficiency requires us to draw an adverse inference that no such notice was ever mailed. We are unpersuaded.

In cases such as these, the onus lies on the taxpayer to prove that the notice of deficiency was not sent. *See, e.g.*, *Yusko v. Comm'r*, 89 T.C. 806, 808 (1987). Moreover, the Government need only show that it *mailed* a notice of deficiency; it need not make any showing that a notice mailed to the taxpayer's last-known address was actually *received* by the taxpayer. *United States v. Dixon*, 672 F. Supp. 503, 506 (M.D. Ala. 1987), *aff'd mem.*, 849 F.2d 1478 (11th Cir. 1988).[5]

In *Dixon*, we affirmed the district court's grant of summary judgment in favor of the Government in a case strikingly similar to that at bar. 849 F.2d 1478. The taxpayer had argued, as O'Callaghan does here, that the Government's failure to adduce a Form 3877 precluded the grant of summary judgment in its favor.

---

[5]In *United States v. Chila*, a panel of this court noted: "This Court affirmed the judgment in *Dixon* by an unpublished order which stated: 'We affirm the summary judgment for the government for the reasons set forth in the district court's memorandum opinion.'" 871 F.2d 1015, 1018 (11th Cir. 1989) (citing *Dixon*, 672 F. Supp. at 503).

10

*Dixon*, 672 F. Supp. at 506.  We held that the Government's submission of a copy

of the notice of deficiency addressed to the taxpayer in addition to the declaration

of an IRS officer explaining the absence of any other evidence was sufficient to

demonstrate that the notice of deficiency was mailed in accordance with statutory

requirements:

> In the absence of any direct evidence contradicting the Government's
> position, the presumption of official regularity controls.  The
> presumption of regularity supports the official acts of public officers
> and, in the absence of *clear evidence to the contrary*, courts presume
> that they have properly discharged their officials duties.
>
> As the defendant has failed to affirmatively establish that the Notice
> of Deficiency was not mailed, the Court is satisfied that the
> Government has shown that the Notice was mailed in accordance
> with the statute and regulations.

*Id.* at 506–07 (emphasis in original) (internal citations and quotation marks

omitted); *see Goldston v. United States*, 324 F. App'x 835, 837 (11th Cir. 2009)

(per curiam) (noting that IRS agent's testimony regarding agency's regular

practice, in addition to government records showing notice was mailed, were

"sufficient to show the notice of deficiency was mailed").  We also noted in *Dixon*

that the Government's failure to submit a Form 3877 in corroboration of mailing

was immaterial where the Form 3877 was destroyed as the result of the IRS's

routine document retention policy.  *Dixon*, 672 F. Supp. at 506 ("[T]he records of

11

mailings are maintained by the IRS for only five years and then destroyed . . . [and] would have been routinely destroyed over three years ago.").

Turning to the instant case, the Government submitted a copy of the notice of deficiency addressed to O'Callaghan's New York address in addition to the declaration of IRS Group Manager Herr as evidence that it mailed the notice of deficiency. In her declaration, Herr explains that pursuant to the Internal Revenue Manual, Forms 3877 are retained for five years and are thereafter destroyed; she further declares that her office followed all IRS policies in issuing notices of deficiency during the time periods relevant to this action. O'Callaghan, for his part, has submitted no "direct evidence" whatever "contradicting the Government's position." *Dixon*, 672 F. Supp. at 506. As such, summary judgment was proper.

Appellants contend that the existence of a second notice of deficiency addressed to the P.O. Box address creates a question of fact and precludes summary judgment, but they are wrong. First, the notice sent to the P.O. Box address specifically states that "[a] duplicate copy of this letter and statement is being mailed to you at the following address: 425 East 84th Street, Apt. 4A, New York, NY 10028" (the New York address). Thus, even Appellants' version of events is consistent with the Government having mailed a notice of deficiency to

12

the New York address.  That is all that is required.  Second, Tavares's work notes demonstrate that she obtained the P.O. Box address from O'Callaghan in order to send him certain extension forms and that, in a later conversation, he acknowledged having received those very same forms.   In any case, and even were that not so, we fail to see how the mailing of a second notice of deficiency to a different address touches upon—much less taints—the Government's mailing of a separate notice to the proper, New York address.  In other words, that the Government may have also mailed a second notice of deficiency is of no moment where, as here, the Government makes a proper showing that it mailed the notice to the appropriate address.  At any rate, Appellants have failed to adduce the "direct evidence contradicting the Government's position" necessary to rebut the presumption that the notice of deficiency was mailed in accordance with the governing statute, and the district court correctly so held.  *See Dixon*, 672 F. Supp. at 506; *Goldston*, 324 F. App'x at 837–38.

Before moving further, we pause to note that while O'Callaghan casts nefarious aspersions on the Government's production of the proper notice of deficiency "over a year into the litigation," he submits no evidence whatsoever in support of such claims of malfeasance.  The examination file and notice of deficiency were located by the Government for the first time on July 2, 2010, and

13

the Government provided these documents to Appellants in response to their first request for production, with some 60-plus days still remaining in the discovery period. In a vast bureaucracy, the cogs of government may not turn quite as sprightly as we would have them; that, however, is a far cry from the active wrongdoing suggested by O'Callaghan here. In any event, we will not entertain such unfounded accusations—supported as they are by nothing but O'Callaghan's bald assertions—especially where the record before us directly undermines their veracity.

## 2.  Notice of Assessment and Demand for Payment

Appellants next argue that the tax assessments upon which the Government liens are predicated are invalid because he was not sent the statutorily required notice of assessment and demand for payment.[6]  26 U.S.C § 6303(a) (requiring notice of assessment and demand for payment within 60 days of imposition of assessment); *see* 26 U.S.C. § 6321 (providing that a lien for deficiency in taxes arises only after the taxpayer "neglects or refuses to pay . . . after demand").

"In reducing an assessment to judgment, the Government must first prove

---

[6]Though Appellants wage a series of procedural attacks upon the Government liens, nowhere do they impugn—perhaps because they cannot—the actual merits of the underlying tax deficiencies and assessments therefor. At all events, Appellants had the opportunity to challenge the merits of the tax assessments in the district court below, but instead chose to rest their case on the alleged procedural infirmities of the Government liens.

14

that the assessment was properly made." *United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006). The Government's submission of a Certificate of Assessments and Payments (a Form 4340) is presumptive proof of a valid assessment. *Id.* "Once the Form is provided, the taxpayer must then prove that the assessment is erroneous in order to prevail." *Id.* (internal citation omitted); *see Chila*, 871 F.2d at 1018 (noting that a Form 4340 is "presumptive proof of a valid assessment" (quoting *Dixon*, 672 F. Supp. at 506)). For example, in *Chila*, we held that where the taxpayer "fail[s] to establish affirmatively that the [§ 6303] notice was not sent," the Government's submission of a Form 4340 certifying the mailing of such a notice was "clear" evidence that such notice was sent and was sufficient to support a grant of summary judgment. 871 F.2d at 1019; *see United States v. Korman*, 388 F. App'x 914, 915 (11th Cir. 2010) (per curiam) ("Korman argues the tax assessment is invalid because the government never sent him a notice and demand for payment, but the Form 4340 indicates a notice was sent."); *Brost v. United States*, 88 A.F.T.R.2d (RIA) 5269 (M.D. Fla. 2001) (explaining that a Form 4340 "is prima facie proof that the IRS imposed the assessments on the stated dates and that the IRS mailed the notice and demand letters on the dates indicated"), *aff'd mem.*, 31 F. App'x 942 (11th Cir. 2002).

Applying these principles to the facts before us, the instant case becomes an

15

easy one.  O'Callaghan argues that the IRS failed to send him the notice of assessment and demand for payment requisite to a valid assessment.[7]  The Government has adduced Forms 4340 and the declarations of several IRS officers attesting to the validity and authenticity of the information contained therein. These forms are prima facie evidence that the notice of assessment and demand for payment were mailed to O'Callaghan in accordance with the statute.

Because the Government presented Forms 4340 demonstrating it validly assessed O'Callaghan and noticed those assessments, O'Callaghan bears the burden of demonstrating some infirmity in either the assessment or notice thereof. *See White*, 466 F.3d at 1248; *see also Dixon*, 672 F. Supp. at 507.  As the district court correctly held, O'Callaghan has adduced no evidence whatever to call the Government's presentation into question.  And though O'Callaghan argues that we

---

[7]The Government submits that notice of assessment and demand for payment are required "only in circumstances when the Government uses its statutory *administrative* collection powers."  Thus, under the Government's reasoning, the liens at issue here would be valid even if a § 6303 notice and demand had not been sent.  We disagree.  It is true that in *Chila*, we specifically approved the trial court's holding that notice of an assessment was not required prior to the IRS's commencement of a civil collection suit against a taxpayer.  871 F.2d at 1018–19. At the same time, however, we expressly contrasted the lack of a demand requirement prior to a collection suit with the statutory demand requirement applicable to liens, writing: "Section 6321 of the Code provides that a lien shall arise if a 'person liable to pay a tax neglects or refuses to pay the same *after demand*.'" *Id.* at 1018 (emphasis in original).  Therefore, the Government is incorrect that no notice of assessment and demand for payment is required before a lien can arise. Because the statute relating to liens specifically requires a notice of assessment and demand for payment before a lien can issue, the Government's contention that no such notice is required must fail.

16

should draw an adverse inference from the Government's failure to adduce an actual copy of the notice and demand it purportedly sent, a long line of our cases hold that a Form 4340 is sufficient, without a copy of the actual notice of assessment, to prove issuance and notice of a valid assessment. *See White*, 366 F.3d at 1248–49; *Chila*, 871 F.2d at 1019; *Dixon*, 849 F.2d 1478 (affirming district court without published opinion). On this record, Appellants have failed to rebut the presumption of validity necessary to defeat summary judgment.[8] The judgment of the district court is affirmed.

      **AFFIRMED.**

---

[8]In their *pro se* reply brief, Appellants raise a panoply of additional issues that were not argued in their initial brief. We ordinarily will not consider arguments raised for the first time in a reply brief. *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) (per curiam). Nonetheless, these arguments are either inapposite or frivolous. For example, O'Callaghan tangentially argues that he had no opportunity to challenge the assessments because an IRS agent told him via telephone in 1990 that the period to appeal the assessments had lapsed. In fact, O'Callaghan could have filed a petition in the Tax Court for a redetermination of the assessments. He did not. And insofar as O'Callaghan claims the alleged 1990 telephone call estops the Government from enforcing the assessments, this argument misses the mark: claims of estoppel against the government, after all, require a showing of "some affirmative misconduct," *Tefel v. Reno*, 180 F.3d 1286, 1303 (11th Cir. 1999), and O'Callaghan points to none.